UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JAY RIENSTRA,

    Plaintiff,

v.                                                         Case No. 1:21-cv-7
                                                              Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his applications for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed applications for benefits on January 7, 2019, alleging a disability onset date of January 2, 2019.  PageID.52.  Plaintiff later amended the alleged onset date to December 1, 2018.  *Id*.  Plaintiff identified his disabling conditions as meralgia paresthetica, depression, diabetes, anxiety, and insomnia.  PageID.254.  Prior to applying for DIB, plaintiff completed the 11th grade and had past work as a food delivery driver and a maintenance repairer.  PageID.60, 255.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 11, 2020.  PageID.52-62.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

### I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ's DECISION

Plaintiff's application failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff met the insured requirements of the Social Security Act through March 31, 2022, and that he has not engaged in substantial gainful activity since the amended alleged onset date of December 1, 2018. PageID.54. At the second step, the ALJ found that plaintiff had severe impairments of diabetes and degenerative changes in the right hip. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.56.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that he can occasionally lift/carry up to 10 pounds; can frequently lift/carry less than 10 pounds; can combine periods of standing/walking activities up to four hours in an eight-hour workday; requires an at will sit/stand option; can combine periods of sitting for up to six hours in an eight-hour workday; requires a cane for ambulation; can occasionally climb ramps/stairs; can do no climbing of ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and must avoid all exposure to unprotected heights.

PageID.56. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.60.

At step five, the ALJ determined that plaintiff could perform other unskilled jobs existing in the national economy at the sedentary exertional level. PageID.60-61. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as sorter (45,000 jobs), inspector (48,000 jobs), and assembly (55,000 jobs). PageID.61. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2018 (the amended alleged onset date) through February 11, 2020 (the date of the decision). PageID.61-62.

### III. DISCUSSION

Plaintiff has raised one error on appeal.

**The Commissioner errored as a matter of law in finding the opinion of Johnathan C. Gibson, DNP, the plaintiff's primary care provider, not persuasive because it was not supported by a function-by-function assessment but found the state agency medical consultant persuasive even though said consultant never examined plaintiff or reviewed new evidence received after said consultant rendered their opinion.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).

5

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).[1] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. §§ 404.1520c(b)(3) and 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered

---

[1] The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1). The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

6

each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

Here, DNP Gibson gave a sworn statement on January 15, 2020. *See* Exh. 12F (PageID.517-526). The ALJ addressed DNP Gibson's statement as follows:

> Jonathan Gibson, DNP, a treating provider, indicated the claimant "has functional limitations" and would be unable to work full time even with the use of a sit/stand option. Additionally, Mr. Gibson stated the claimant would "likely" miss at least one day of work each week in addition to being off task more than 15 percent of the workday (Ex 12F). These comments are not persuasive.
>
> Despite indicating the claimant had functional limitations, Mr. Gibson did not provide a function-by-function assessment of the claimant's abilities in spite of his impairments. There is no indication the claimant would be off task as described in the opinion. Finally, while the nature of the claimant's right hip complaints and the radiographic evidence supports the need for a sit/stand option, Mr. Gibson's suggestion the claimant would be unable to perform full time work is a conclusory statement on an issue expressly reserved to the Commissioner.

PageID.59.

As the ALJ observed, DNP Gibson did not present a function-by-function assessment of plaintiff's condition. Rather, DNP Gibson drew broad conclusions, *e.g.*: "[h]e's deconditioned"; he cannot work an eight-hour workday even with a sit/stand option due to "[p]ain and lack of flexibility, possibly some hypoglycemic episodes"; it is likely he would be off task 15% of the day; [h]e would likely miss at least one day per week"; he has an unsteady gait; he has frequent hypoglycemic episodes; and he has some peripheral neuropathy. PageID.520-524. While

7

DNP Gibson opined that plaintiff had work-preclusive limitations, he appeared to undercut that opinion stating that "it's [sic] seems that symptoms are out of proportion to diagnostic findings," referring to objective medical evidence including a hip x-ray in May 2019 and an MRI "which shows mild labral tear." PageID.524.[2]

In addition to failing to present a function-by-function assessment, DNP Gibson's opinion that plaintiff would be unable to work full time is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Such a statements constitute a legal conclusion that is not binding on the Commissioner. *See Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). Based on this record, the ALJ's finding that DNP Gibson's opinions were not persuasive is supported by substantial evidence.

Finally, with respect to the state agency medical consultant, plaintiff refers to a medical consultant's record review in April 2020. Plaintiff's Brief (ECF No. 13, PageID.539). There is no such document in the record. Presumably, plaintiff is referring to documents prepared by Phillip M. Green, M.D., a non-examining medical consultant reviewed plaintiff's records and entered an opinion on April 22, 2019 (Exhs. 1A and 2A, PageID.106-129). The ALJ evaluated Dr. Green's opinion as follows:

> Phillip Green, M.D., a neurologist and State agency medical consultant, opined in April 2019 that the claimant could essentially perform at the sedentary exertional level. However, the claimant could stand and/or walk for four hours in an eight-hour workday. The claimant could occasionally push/pull with the right lower extremity, and he had to be able to alternate sitting and standing as needed.

---

[2] Plaintiff states that the medical evidence confirms a labral tear of his right hip found in the October 15, 2020 MRI. Plaintiff's Brief (ECF No. 13, PageID.539). Plaintiff is apparently referring to the October 15, 2019 MRI addressed by DNP Gibson which included findings of: "Hip joint and articular cartilage: Suspect a small tear of the anterosuperior labrum. No para labral cyst. No chondromalacia identified. No appreciable joint effusion or osteochondral body." PageID.491-492.

> He could never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. Finally, the claimant had to avoid all exposure to heights (Ex 1A and 2A).
>
> The opinion of Dr. Green is persuasive. It is consistent with and supported by the objective evidence of record. An MRI of the right hip was suggestive of a labral tear, which supports at least some of the claimant's subjective complaints of ongoing right hip pain and associated difficulties such as walking. Overall exertional limitation is therefore supported in the residual functional capacity, as are postural and environmental limitations as indicated by Dr. Green. However, the claimant has routinely presented to appointments with an assistive device. He has also complained of the need for a cane in his home at times. Based on this evidence, the undersigned finds the claimant is somewhat more limited than determined by Dr. Green.

PageID.59.

The gist of plaintiff's claim is that Dr. Green reviewed an incomplete medical record of plaintiff's condition as it existed on April 22, 2019, and that the ALJ did not consider evidence presented after that date. There will always be a gap between the time the agency experts review the record, give their opinions, and the time the hearing decision is issued. *See Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id*. (approving lower court's analysis). The issue on review is whether the evidence submitted after the state agency assessment fatally undermines the accuracy of that assessment. *Id*. Here, the ALJ reviewed all of the evidence submitted by plaintiff and explained why that evidence was consistent with the postural and environmental limitations in Dr. Green's opinion. As discussed, the ALJ also noted that plaintiff used a cane at times and was "somewhat more limited than determined by Dr. Green." Accordingly, plaintiff's claim of error is denied.

## IV.     CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 14, 2022                         /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge